## THE SCHOONER SANTINO.

### FORSYTH v. O'BRIEN et al.

(Circuit Court of Appeals, First Circuit. February 3, 1925.)

No. 1725.

**Brokers ⬳106—Contract made with brokers held not authorized by owner.**

Evidence *held* to support finding of trial court that contract for towage of respondent's schooner, made with brokers, was without respondent's authority.

Appeal from the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Suit in admiralty by George I. Forsyth against Timothy F. O'Brien and another, owners of the schooner Santino. Decree for respondents, and libelant appeals. Affirmed.

George L. Dillaway, of Boston, Mass. (Carl D. Isaacs, of New York City, on the brief), for appellant.

Solomon Rosenberg, of New Bedford, Mass. (Timothy F. O'Brien, of New Bedford, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This admiralty appeal involves a claim for $800 for towing the schooner Santino from New York to New Bedford. The case turns on a question of agency. Of course the burden is upon the appellant to show a contract. The record contains much that is immaterial, and fails to disclose facts easily ascertainable and of importance. It contains the evidence of three witnesses who testified before the court, and of five testifying on deposition. The court below is obviously in a better position than is this court to judge of the weight of the evidence of the witnesses testifying before him.

The claimants (appellees), O'Brien and Bentley, of New Bedford, bought the Santino in New York, in September, 1921, through the Globe Line, Inc., ship brokers, of which Avrutis was president, and Gilbert port captain. The business was done through Gilbert. The purchasers had no office in New York. Gilbert by deposition testified that after the purchase, O'Brien, at the office of the Globe, Inc., on September 7th to 10th, had Gilbert call up several towing concerns to arrange for towing the schooner to New Bedford, and that this resulted in an agreement with one Hughes to tow the schooner over for $450. But Meader, who testified before the court, said that he made the contract with Hughes, with O'Brien and Gilbert present, and then lowered the schooner's mast, so she might go under the bridges, and thus through Hell Gate, the shorter route. Hughes did not tow her, because, as Hughes later told Gilbert, she was not ready on time, so that his towboat went off on another job. Gilbert, who was going away, left word with Avrutis to arrange to have her towed when ready. Avrutis, acting through one Ludwig of another line, after some negotiation, arranged with Forsyth, the libelant, to tow her for $800. Forsyth confirmed this arrangement with Avrutis by telephone, and also by letter dated September 20, 1921, 10 days after the arrangement with Hughes.

Meantime the mast of the schooner had been struck. To lower and reset the mast cost from $200 to $300. In fact, the schooner was towed by way of the south side of Long Island, because (at least, as O'Brien was informed) a sunken vessel made the Hell Gate route impracticable.

The appellant presented his bill for $800 to O'Brien, who objected "that the bill was too large; that the top masts had been struck." He "offered to pay $450, the amount of the Hughes contract." He testified that Meader made the contract with Hughes for towage, and that he never authorized either Ludwig or Avrutis to employ the libelant. His offer was refused and this libel filed.

The court below found that the libelant had "entirely failed to show that the contract was made with the owners of the schooner or with any one authorized to act for them"; that the Globe Line, Inc., acted "without any authority, express or implied." We cannot say this conclusion was wrong. We find no evidence that the libelees were notified, until after the towing was done, that the arrangement with Hughes was off, or that, either by direct authorization or under any custom, the brokers were empowered to employ a substitute for Hughes, particularly at a higher price.

The decree of the District Court is affirmed, with costs.